UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NUTRI PHARMACEUTICALS RESEARCH INC., <br><br> Plaintiff(s), <br><br> v. <br><br> STAUBER PERFORMANCE INGREDIENTS, INC., <br><br> Defendant(s). | Case No. 2:17-CV-2964 JCM (NJK) <br><br> ORDER |

Presently before the court is plaintiff/counter-defendant Nutri Pharmaceuticals Research, Inc.'s ("plaintiff") motion for partial summary judgment. (ECF No. 22). Defendant/counter-claimant Stauber Performance Ingredients, Inc. ("defendant") filed a response (ECF No. 27), to which plaintiff replied (ECF No. 28).

Also before the court is defendant's motion in limine. (ECF No. 29). Plaintiff filed a response (ECF No. 33), to which defendant replied (ECF No. 34).

**I.    Background**

The instant action arises from a series of allegedly-breached contracts. On one hand, plaintiff claims that defendant failed to pay for thirty-two shipments of goods. (ECF No. 1). On the other hand, defendant claims that plaintiff breached three unrelated contracts when it shipped rancid goods. (ECF No. 5).

Plaintiff manufactures and supplies "nutritional bioactive supplements." (ECF No. 22 at 1). Defendant provides ingredients to the food, nutritional, pharmaceutical, cosmetic, and pet care industries. *Id.* at 2. The parties first began doing business with one another in October

2007. *Id.* Defendant would purchase and resell materials that plaintiff manufactured. *Id.* This business relationship continued without incident for almost ten years. *Id.*

Then problems began to arise. (ECF No. 29 at 2). Defendant ordered borage oil powder from plaintiff in December 2015, and against in January 2016, for one of its customers, Glanbia Nutritionals, Inc. ("Glanbia"). *Id.* at 3. Glanbia used the borage oil powder to make gummies but, when the gummies were finished in January 2017,[1] it informed defendant that the gummies smelled rancid. *Id.* Glanbia attributed the smell to the borage oil powder. *Id.* Defendant tested the borage oil powder and found that it had high peroxide values, which were consistent with rancidity. *Id.* at 3–4.

After this incident, Glanbia tested the borage oil powder that it had ordered in June 2016, before it produced rancid-smelling gummies. *Id.* at 4. The test showed a high peroxide value, which is consistent with rancidity. *Id.*

Defendant ordered conjugated linoleic acid oil powder for another one of its customers, Milk Specialties Global Events ("Milk"), in March 2017, which plaintiff delivered in May. *Id.* at 2–3. Milk rejected the conjugated linoleic acid oil powder because of a rancid smell. *Id.* at 3. Defendant tested the conjugated linoleic acid oil powder and found that it had high peroxide values, which was consistent with rancidity. *Id.* at 3.

Defendant refunded both Glanbia and Milk for their orders. *Id.* at 4. Plaintiff denied responsibility for the rancid products. (ECF No. 33 at 2 (plaintiff maintains that the products "became rancid due to factors beyond [its] control.")).

More problems arose between August 2017 and October 2017. (ECF No. 22 at 2). Defendant placed thirty-two purchase orders with plaintiff for various products, and plaintiff delivered them to defendant's customers. *Id.* Although defendant's customers received the goods as required by the thirty-two purchase orders, defendant refused to pay for the goods. *Id.* Defendant claims that it is entitled to offset any monies owed to plaintiff for the thirty-two shipments because plaintiff breached the Glanbia and Milk contracts by delivering rancid goods. (ECF No. 27 at 6–7).

---

[1] Glanbia used the borage oil powder before its expiration date. (ECF No. 29 at 3).

Plaintiff now moves for summary judgment only on its claims against defendant. (ECF No. 22). Defendant moves to exclude the opinion and testimony of plaintiff's rebuttal expert. (ECF No. 29).

**II.     Legal Standard**

   *A. Motion for summary judgment*

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court

need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

B. Motion in limine

"The court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104. Motions *in limine* are procedural mechanisms by which the court can make evidentiary rulings in advance of trial, often to preclude the use of unfairly prejudicial evidence. *United States v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009); *Brodit v. Cambra*, 350 F.3d 985, 1004–05 (9th Cir. 2003).

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of

1 trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1980). Motions *in limine* may be used to exclude or admit evidence in advance of trial. *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991).

Judges have broad discretion when ruling on motions *in limine*. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1999) ("The district court has considerable latitude in performing a Rule 403 balancing test and we will uphold its decision absent clear abuse of discretion."). "[I]n limine rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that *in limine* rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).

"Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Conboy v. Wynn Las Vegas, LLC*, No. 2:11-cv-1649-JCM-CWH, 2013 WL 1701069, at *1 (D. Nev. Apr. 18, 2013).

**III. Discussion**

*A. Plaintiff's motion for partial summary judgment*

Defendant correctly notes that plaintiff, "as the moving party with the burden of proof at the time of trial, must establish the absence of a genuine issue of fact on each issue material to its case." (ECF No. 27 at 4 (citing *Las Vegas Tribe of Paiute Indians v. Phebus*, 5 F. Supp. 3d 1221, 1227 (D. Nev. 2014))). "A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement." *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987). Thus, plaintiff must show: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages. *See id.*

Defendant does not dispute that the thirty-two purchase orders constitute enforceable contracts between the parties. Defendant also does not dispute that plaintiff has suffered

damages. Thus, only two elements remain for the court to consider: plaintiff's performance and defendant's breach.

Defendant argues that plaintiff failed to prove that the goods were delivered or that the goods were accepted. (ECF No. 27 at 4–5). Accordingly, defendant contends that plaintiff failed to carry its burden on the third element, performance. *Id.* at 5. Defendant also argues that plaintiff fails on the breach element. *Id.* at 6. By defendant's estimation, whether defendant materially breached the contract is a question of fact and should be decided by a jury. *Id.*

Neither argument is persuasive. Defendant's first argument is rooted in the premise that the affidavit of Godfrey Yaw, plaintiff's principal and owner, is "self-serving" and falls short of proving that plaintiff delivered the goods as required by the thirty-two contracts. (ECF No. 27 at 5). Defendant goes on to say that "[c]onspicuously absent from Mr. Yew's affidavit, as well as [plaintiff's] [m]otion, is actual proof of [delivery." *Id.* The court disagrees.

Defendant ignores the thirty-two exhibits that plaintiff attaches to its motion for partial summary judgment, all of which include delivery documents. (*See* ECF Nos. 22-1–22-32). Further, defendant ignores the deposition testimony of Patricia Wratschko, defendant's Rule 30(b)(6) designee. (ECF No. 22-34). Ms. Wratschko indicated that "[defendant] *would* know if [its customers] rejected product" and that "defendant *does* know" if any of its customers rejected product. *Id.* at 6 (emphasis added). "None of them were rejected." *Id.*

Accordingly, the court finds that there is not a genuine issue of material fact as it pertains to the second element of plaintiff's breach of contract claim. Plaintiff performed its obligations pursuant to the thirty-two contracts.

Defendant decided not to pay plaintiff for the thirty-two shipments. Defendant does not dispute that failing to pay was a material breach of the contract. (ECF No. 27 at 6). Nor can it. Under the Nevada Uniform Commercial Code, "[t]he obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract." Nev. Rev. Stat. § 104.2301.

As discussed above, plaintiff shipped the goods in accordance with the thirty-two contracts. Defendant's customers accepted plaintiff's goods, and defendant's "Rule 30(b)(6)

James C. Mahan
U.S. District Judge

- 6 -

corporate representative acknowledged that neither [defendant] nor its customers ever disputed the nature or quality" of the goods. (ECF No. 22 at 18); (*see also* ECF No. 22-34 at 6). Thus, defendant accepted the goods.

But defendant did not pay for the goods. Accordingly, defendant materially breached the contract. Because the court finds that plaintiff performed its obligations under the contract, but defendant breached its obligation to pay, the court finds no genuine issue of material fact as to this claim. Plaintiff's motion for partial summary judgment is granted.

*B. Defendant's motion in limine*

Federal Rule of Evidence 702 controls the court's determination whether to strike plaintiff's proposed expert witness, Dr. Simonida Grubjesic:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see generally Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

"*Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). This "gatekeeping obligation" requires "that all admitted expert testimony is both relevant and reliable." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017). Expert testimony must be relevant and reliable, and it must "relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs." *Guidroz–Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001).

James C. Mahan
U.S. District Judge

- 7 -

Exclusion of expert testimony is proper only when such testimony is irrelevant or unreliable because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

Here, defendant argues that plaintiff's rebuttal expert, Dr. Grubjesic, should be excluded because "her opinions lack proper foundation and are unreliable, and therefore, fail to meet the assistance and reliability requirements outlined in Fed. R. Evid. 702." (ECF No. 29 at 6). In particular, defendant contends that Dr. Grubjesic failed to conduct any tests, interviews, or otherwise investigate the circumstances of this particular case. *Id.* at 8–11. Thus, defendant concludes that "[Dr.] Grubjesic's testimony is based on pure speculation, is not grounded in reliable scientific principles, and does not meet the stringent requirements of Fed. R. Evid. 702." *Id.* at 11.

Indeed, Dr. Grubjesic's lacks support for several of her conclusions. For instance, Dr. Grubjesic concluded that "[i]mproper handling during shipping followed by improper storage and handling in the Oshkosh, WI, facility, which deviated from manufacturer's recommendations, would lead to premature deterioration of [the plaintiff's products]." (ECF No. 29-1 at 8). But Dr. Grubjesic also conceded in her deposition that "[t]he documents that [she] reviewed did not include any material to confirm" that conditions in the Oshkosh facility were "proper or improper." (ECF No. 29-2 at 9). Similarly, Dr. Grubjesic indicated that "[t]he data obtained for the peroxide values (PV) . . . is not statistically representative of the peroxide values (PV) of the whole . . . shipment." (ECF No. 29-1 at 5). But Dr. Grubjestic admits that she is not a statistician, has no background in statistics, and did not consult a statistician in coming to her conclusion. (ECF No. 29-2 at 12).

In response, plaintiff represents as follows:

> [Plaintiff] did not produce Dr. Grubjesic or her expert report for the purpose of obtaining testimony from her on th[e] ultimate question—how or when the powders deteriorated. Rather, Dr. Grubjesic will testify more generally about the nature of these products, how they degrade, and the factors that contribute to rancidity in edible oil powders.

James C. Mahan
U.S. District Judge

- 8 -

(ECF No. 33 at 2). Plaintiff argues that Dr. Grubjesic is qualified, as an organic chemist, "to educate the trier of fact about scientific principles regarding the properties of [conjugated linoleic acid] and borage oil powder, how they degrade, and the factors that contribute to rancidity . . . ." *Id.* at 7–8.

As defendant notes, plaintiff's argument is belied by the first conclusion in Dr. Grubjesic's expert report: "The [plaintiff's] product quality was not compromised prior and/or at the point of leaving [plaintiff's] warehouse in Las Vegas, NV for the two separate product shipments . . . ." (ECF No. 29-1 at 7). Dr. Grubjesic clearly opines on the ultimate issue in this case.

However, the court considers whether—consistent with plaintiff's arguments—Dr. Grubjesic's scientific and specialized knowledge is helpful to the trier of fact more generally. To be sure, defendant does not dispute Dr. Grubjesic's qualification in organic chemistry. (*See generally* ECF No. 29). Instead, defendant argues that "[g]eneral testimony regarding the nature and volatility of edible oil powders and the ways in which they could possibly become rancid will not provide any insight for the jury in determining whether they were rancid at the time they left [plaintiff's] possession." (ECF No. 34 at 6).

The court disagrees. Plaintiff's defense is that the edible oil powders it shipped were not rancid when they left its control and, instead, improper handling and storage lead to premature deterioration of the powders. Defendant itself notes that "the fact in issue is whether or not the powders were rancid at the time they left [plaintiff's] possession." *Id.* The jury must determine whether the powders were rancid at the time they left plaintiff's control, or whether the powders became rancid sometime thereafter. Thus, the volatility of edible oil powders and the ways in which they could possibly become rancid is highly relevant to plaintiff's defense.

To the extent defendant objects to the relevance of Dr. Grubjesic's general testimony, the objection goes more to the weight than the admissibility of the information. Defendant is free to cross examine Dr. Grubjesic about her lack of knowledge as it pertains to the fact of this case. After all, as the court previously noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means

of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

Thus, the court grants defendant's motion as it pertains to Dr. Grubjesic's opinion on the ultimate issue. Dr. Grubjesic will not be allowed to testify regarding what caused the rancidity of the shipments to Glanbia or Milk. Dr. Grubjesic will not be allowed to testify regarding statistical conclusions.

The court denies defendant's motion insofar as Dr. Grubjesic will be allowed to testify "more generally about the nature of these products, how they degrade, and the factors that contribute to rancidity in edible oil powders." (ECF No. 33 at 2).

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for partial summary judgment (ECF No. 22) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant's motion in limine (ECF No. 29) be, and the same hereby is, GRANTED in part and DENIED in part.

DATED December 10, 2019.

_____
UNITED STATES DISTRICT JUDGE